UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Katie Kuciver, individually and on behalf of all others similarly situated,<br><br>                      Plaintiff,<br><br>        - against -<br><br>Fermented Sciences, Inc.,<br><br>                      Defendant | 1:21-cv-05668 |

Plaintiff's Memorandum of Law in Opposition to
Defendant's Motion to Dismiss the Complaint

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................ ii

TABLE OF AUTHORITIES ........................................................................................................ iii

INTRODUCTION .......................................................................................................................... 1

FACTUAL BACKGROUND ......................................................................................................... 1

LEGAL STANDARDS .................................................................................................................. 2

ARGUMENT .................................................................................................................................. 2

I.     PLAINTIFF'S CLAIMS ARE PLAUSIBLE AND VIABLE ............................................ 2

        A.     The Products Expressly Represented Health Benefits ............................................. 3

        B.     Claims of Misrepresentation and Deception are Plausible ...................................... 4

        C.     Defendant's "Common Sense" Argument is Misplaced .......................................... 5

II.     REGULATIONS SUPPORT PLAINTIFF'S CLAIM OF DECEPTION .......................... 6

III.     CONSUMER FRAUD MULTISTATE CLAIMS SHOULD PROCEED ........................ 7

IV.     PLAINTIFF'S WARRANTY CLAIMS SATISFY THE ELEMENTS ............................ 8

        A.     Plaintiff Provided Notice Consistent with the Statute ............................................. 8

        B.     Plaintiff Satisfied the Direct-Dealing Exception to Privity .................................... 8

        C.     Misrepresentations Support Warranty Claims ........................................................ 9

        D.     MMWA Claim is Based on the Plausible Express and Implied Warranty Claims ................................................................................................... 9

V.     COMMON LAW CLAIMS ARE ADEQUATELY PLED .............................................. 10

        A.     Special Relationship Supports Negligent Misrepresentation Claim ..................... 10

        B.     The Complaint Exceeds Particularity Requirements for Fraud ............................ 10

        C.     Unjust Enrichment is Viable .................................................................................. 11

VI.     PLAINTIFF HAS STANDING TO SEEK INJUNCTIVE RELIEF ............................... 11

CONCLUSION ............................................................................................................................. 12

## TABLE OF AUTHORITIES

**Cases**

*Anchor Bank, FSB v. Hofer*,
 649 F.3d 610 (7th Cir. 2011) .................................................................................................. 11

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) .................................................................................................................. 2

*Ass'n Benefit Servs. v. Caremark Rx, Inc.*,
 493 F.3d 841, 855 (7th Cir. 2007) .......................................................................................... 11

*Bakopoulos v. Mars Petcare US, Inc.*,
 No. 20-cv-6841, 2021 WL 2915215 (N.D. Ill. July 12, 2021) ................................................. 8

*Bausch v. Stryker Corp.*,
 630 F.3d 546 (7th Cir. 2010) .................................................................................................... 7

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) .................................................................................................................. 2

*Bell v. Publix Super Markets, Inc.*,
 982 F.3d 468 (7th Cir. 2020) .................................................................................................... 6

*Bonte v. U.S. Bank, N.A.*,
 624 F.3d 461 (7th Cir. 2010) .................................................................................................. 11

*Buckman Co. v. Plaintiffs' Legal Comm.*,
 531 U.S. 341 (2001) .................................................................................................................. 6

*Camasta v. Jos. A Bank Clothiers, Inc.*,
 No. 12-cv-7782, 2013 WL 474509 (N.D. Ill. Feb. 7, 2013) ................................................... 12

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
 761 F.3d 732 (7th Cir. 2014) .................................................................................................. 11

*Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*,
 159 Ill.2d 137 (1994) .............................................................................................................. 10

*Connick v. Suzuki Motor Co.*,
 675 N.E.2d 584 (1996) ............................................................................................................. 4

*Davis v. G.N. Mortg. Corp.*,
 396 F.3d 869 (7th Cir. 2005) .................................................................................................... 2

*De Falco v. Vibrum USA, Inc.*,
 No. 12-cv-7238, 2013 WL 1122825 (N.D. Ill. Mar. 18, 2013) ................................................ 8

*Elward v. Electrolux Home Prod., Inc.*,
   214 F. Supp. 3d 701 (N.D. Ill. 2016) .................................................................................... 9

*Ferris Mfg. Corp. v. Carr*,
   No. 14-cv-04663, 2015 WL 279355 (N.D. Ill. Jan. 21, 2015)............................................... 11

*Floyd v. Am. Honda Motor Co., Inc.*,
   966 F.3d 1027 (9th Cir. 2020) ............................................................................................. 10

*Freeman v. MAM USA Corp.*,
   528 F. Supp. 3d 849 (N.D. Ill. 2021) ...................................................................................... 2

*Garrison v. Heublein, Inc.*,
   673 F.2d 189 (7th Cir. 1982) .................................................................................................. 5

*Harris v. CVS Pharmacy, Inc.*,
   No. ED-cv-1302329, 2015 WL 4694047 (C.D. Cal. Aug. 6, 2015) ........................................ 7

*Hishon v. King*,
   467 U.S. 69 (1984).................................................................................................................. 2

*In re Bridgestone/Firestone, Inc. Tires Prods.*,
   155 F. Supp. 2d 1069 (S.D. Ind. 2001) ................................................................................... 8

*In re Herbal Supplements Mktg. & Sales Pracs. Litig.*,
   No. 15-cv-5070, 2017 WL 2215025 (N.D. Ill. May 19, 2017)................................................ 7

*In re Rust-Oleum Restore Mktg., Sales Pracs. & Prod. Liab. Litig.*,
   155 F. Supp. 3d 772 (N.D. Ill. 2016) ...................................................................................... 9

*Jamison v. Summer Infant (USA), Inc.*,
   778 F. Supp. 2d 900 (N.D. Ill. 2011) ...................................................................................... 6

*Le v. Kohls Dep't Stores, Inc.*,
   160 F. Supp. 3d 1096 (E.D. Wis. 2016)................................................................................ 12

*Marek v. Molson Coors Beverage Company et al*,
   No. 3:21-cv-07174 (WHO) (N.D. Cal., Jan. 14, 2022), ECF No. 34 ...................................... 5

*Moorman Mfg. Co. v. National Tank Co.*,
   435 N.E.2d 443 (Ill. 1982).................................................................................................... 10

*Morrison v. YTB Int'l, Inc.*,
   649 F.3d 533 (7th Cir. 2011) .................................................................................................. 8

*Muir v. Nature's Bounty, Inc.*,
   No. 15-cv-9835, 2016 WL 5234596 (N.D. Ill. Sept. 22, 2016)............................................ 12

*Muir v. Nature's Bounty, Inc.*,
　No. 15-cv-9835, 2017 WL 4310650 (N.D. Ill. Sept. 28, 2017) .................................................. 7

*Muir v. Playtex Prod., LLC*,
　983 F. Supp. 2d 980 (N.D. Ill. 2013) ........................................................................................ 3

*O'Connor v. Ford Motor Co.*,
　477 F. Supp. 3d 705 (N.D. fIll. 2020) ....................................................................................... 9

*Phillips v. DePaul Univ.*,
　19 N.E.3d 1019 (Ill. App. Ct. 2014) ......................................................................................... 2

*Pichardo v. Only What You Need, Inc.*,
　No. 20-cv-493, 2020 WL 6323775 (S.D.N.Y. Oct. 27, 2020) .................................................. 6

*Quitno v. General Motors, LLC*,
　No. 1:18-cv-07598, 2020 WL 777273 (N.D. Ill. Feb. 18, 2020) ............................................ 11

*Rhodes Pharmacal Co. v. Continental Can Co.*,
　72 Ill.App.2d 362, 219 N.E.2d 726 (1st Dist. 1966) ................................................................. 9

*Roberts v. City of Chicago*,
　817 F.3d 561 (7th Cir. 2016) .................................................................................................... 2

*Stemm v. Tootsie Roll Industries, Inc.*,
　374 F. Supp. 3d 734 (N.D. Ill. 2019) ........................................................................................ 6

*Tamburo v. Dworkin*,
　601 F.3d 693 (7th Cir. 2010) .................................................................................................... 8

*Voelker v. Porsche Cars North Amer., Inc.*,
　353 F.3d 516 (7th Cir. 2003) .................................................................................................... 9

*Wolph v. Acer America Corp.*,
　No. 09-cv-01314, 2009 WL 2969467 (N.D. Cal. Sept. 14, 2009) .......................................... 10

*Zahora v. Orgain, LLC*,
　No. 21-cv-705, 2021 WL 5140504 (N.D. Ill. Nov. 4, 2021) .................................................... 6

**Rules**

Fed. R. Civ. P. 9(b) ............................................................................................................... 10, 11

Fed. R. Civ. P. 12(b)(6) ................................................................................................................ 2

**Statutes**

15 U.S.C. § 2301(6)(a) .................................................................................................................. 9

15 U.S.C. § 2310(d)(3) ............................................................................................................... 9

15 U.S.C. § 2310(e) ................................................................................................................. 10

28 U.S.C. § 1332(d)(2) ............................................................................................................. 10

810 ILCS 5/2-313(1)(a) ............................................................................................................. 9

810 ILCS 5/2-314(2)(f) .............................................................................................................. 9

810 ILCS 5/2-607(3)(a) ....................................................................................................... 8, 10

815 ILCS 505/1 .......................................................................................................................... 1

## INTRODUCTION

Plaintiff Katie Kuciver ("Plaintiff") submits this Memorandum of Law in Opposition to the Motion by Fermented Sciences, Inc. ("Defendant" or "Fermented Sciences") to Dismiss the Complaint ("Compl."). ECF Nos. 1, 15.

Plaintiff brings claims for damages for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.*, and the consumer protection laws of North Dakota, Kansas, West Virginia, Wyoming, and Delaware, Compl. ¶¶ 142-153, breaches of warranty, Compl. ¶¶ 154-162, and common law claims, Compl. ¶¶ 163-171, on behalf of consumers who purchased hard seltzer and kombucha, represented as "contain[ing] ingredients whose positive effect outweighed the negative effects from consuming alcohol" under the Flying Embers brand (the "Products"). Compl. ¶¶ 1, 125. Plaintiff seeks monetary and injunctive relief, expenses, and reasonable attorneys' fees. Compl. at 22, Prayer for Relief, ¶¶ 2-6.

Defendant argues that the Complaint should be dismissed because, among other reasons, the allegations are not plausible. ECF No. 15-1, Memorandum of Law in Support of Motion to Dismiss ("Def. Mem.") at 1; *see* ECF Nos. 15-2, 15-3, 15-4.[1] None of its arguments are a basis for dismissal and its Motion should be denied.

## FACTUAL BACKGROUND

Defendant manufactures, labels, markets, and sells "Hard Seltzer" and "Hard Kombucha" beverages represented as containing beneficial ingredients such as "Antioxidant Vit[amin] C, "Antioxidants," "Real Botanicals," and "Live Probiotics." Compl. ¶ 1.

Plaintiff purchased the Products "expect[ing] ingredients whose positive effects

---

[1] Declaration of Bill Moses in Support of Defendant's Memorandum of Law in Support of Motion to Dismiss ("Moses Decl."); Exhibit 1, Label of Flying Embers Hard Seltzer Clementine Hibiscus ("Product Labels 1"); Exhibit 2, Label of Flying Embers Hard Kombucha Ancient Berry with Blueberry, Goji, & Raspberry ("Product Labels 2").

outweighed the negative effects from consuming alcohol." Compl. ¶ 125. Had Plaintiff known "that the Products [were not] a healthful source of nutrients and dietary ingredients," she would not have bought them or would have paid less. Compl. ¶ 91.

## LEGAL STANDARDS

To proceed beyond a motion made pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016) quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. *Hishon v. King*, 467 U.S. 69, 73 (1984).

"Rule 12(b)(6) does not countenance…dismissals based on a judge's disbelief of a complaint's factual allegations." *Twombly*, 550 U.S. at 556. "[A] plaintiff [need only] plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ARGUMENT

### I. PLAINTIFF'S CLAIMS ARE PLAUSIBLE AND VIABLE

To demonstrate a "deceptive act or practice" under the ICFA, a plaintiff must "allege conduct that plausibly could deceive a reasonable consumer." *Phillips v. DePaul Univ.*, 19 N.E.3d 1019, 1031 (Ill. App. Ct. 2014). "[A] statement is deceptive if it creates a likelihood of deception or has the capacity to deceive." *Freeman v. MAM USA Corp.*, 528 F. Supp. 3d 849, 862 (N.D. Ill. 2021). The "allegedly deceptive act must be looked upon in light of the totality of the information made available to the plaintiff." *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005).

2

A. The Products Expressly Represented Health Benefits

While Defendant summarizes the allegations as "only [a] theory" of a purportedly implied misrepresentation," the vivid context of the Products' front labels, highlighting "Antioxidant Vit[amin] C," "Live Probiotics," and "Brewed with Benefits," depict a beverage which appears to be "a healthful source of nutrients." Def. Mem. at 9; Compl. ¶¶ 1, 36, 53.

 

That Plaintiff's expectations were reasonable is based on her understanding of nutrients such as antioxidants, known to "prevent or delay cell damage, and include vitamins C and E, selenium, beta-carotene, lycopene, lutein, and zeaxanthin." Compl. ¶ 39. Plaintiff was unaware the Products were "unlawfully fortified and labeled in the precise way which was supposed to have been prevented," since that information could only be obtained "beyond the store aisle, which is outside of what the average consumer can be expected to know." Compl. ¶¶ 95-96; *Muir v. Playtex Prod., LLC*, 983 F. Supp. 2d 980, 988 (N.D. Ill. 2013) (reasoning that a purported deceptive statement "must be considered in light of the total mix of information provided to the consumer.").

3

Therefore, the failure to notify consumers that "[a]lcohol consumption interferes with nutrient absorption" is not equivalent to "[t]ruthfully informing consumers what is actually in the Products." Compl. ¶ 45; Def. Mem. at 11.

B. Claims of Misrepresentation and Deception are Plausible

Contrary to Defendant's assertion, Plaintiff "plausibly allege[d] facts establishing that reasonable consumers would" be misled into the false belief the Products provided health benefits sufficient to overcome the negative effects of moderate alcohol consumption. Def. Mem. at 10; *see Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 595 (1996).

Plaintiff's factual allegations are supported by "the non-profit group Center for Science in the Public Interest ('CSPI')," which agreed that "claims such as 'made with antioxidant vitamin C' convey healthfulness and are misleading on alcoholic beverages given their empty calories, association with serious health conditions, and anti-nutrient properties." Compl. ¶ 36. Next, Plaintiff cited studies of how "vitamin-fortified snack foods influence consumers to make negative diet-related decisions." Compl. ¶ 37.

Far from providing added vitamins and nutrients, "[C]onsumption of alcoholic beverages reduces levels of antioxidants, like vitamin C." Compl. ¶ 46 n.1 citing Defeng Wu and Arthur I. Cederbaum, "Alcohol, Oxidative Stress, and Free Radical Damage;" Hartman et al. "Moderate alcohol consumption and levels of antioxidant vitamins and isoprostanes in postmenopausal women."

Since the added vitamin C "is not bio-available when consumed via an alcohol beverage," even though "it is necessary to consume an alcoholic beverage to get this [twenty percent of the daily value]," the result is "empty calories, [] [which] can impair the body's metabolism of nutrients." Compl. ¶¶ 51-53.

4

C. <u>Defendant's "Common Sense" Argument is Misplaced</u>

Defendant mischaracterizes Plaintiff's expectation that its Products would provide a healthful benefit that "outweighed the negative effects from consuming alcohol" as an expectation that "he or she will be *immune* from the negative aspects of alcohol consumption." Def. Mem. at 10 (emphasis added); Compl. ¶ 125.

There is a difference between a scenario where "a seller is not required to warn with respect to products, or ingredients in them," and inducing the purchase of such products through touting their positive attributes. *Garrison v. Heublein, Inc.*, 673 F.2d 189, 191 (7th Cir. 1982) (concluding the dangers of alcohol were "common knowledge"); Compl. ¶ 1. In contrast to *Garrison*, it is not common knowledge that "alcohol prevents the body from using nutrients by altering the transport, metabolism, and storage of nutrients." Compl. ¶ 46.

Recent authority addressed a similar issue about alcoholic beverages with added antioxidants and probiotics. In *Marek*, a court addressed another brand of hard seltzer which promoted "antioxidant Vitamin C." *Marek v. Molson Coors Beverage Company et al*, No. 3:21-cv-07174 (WHO) (N.D. Cal., Jan. 14, 2022), ECF No. 34.

The defendant offered the identical argument presented here, "that no reasonable consumer could be misled into thinking that drinking hard seltzer is 'healthy' as a matter of law because the dangers of consuming alcohol are generally known." *Marek*, at 14. In denying dismissal, the court ruled that defendant's "argument ignores the FDA's own guidance that fortification of alcoholic beverages could be false and misleading." *Marek*, at 14.

To accept Defendant's position that the only plausible interpretation of its labeling is one which "expressly warn[s] that consuming [the Products] 'may cause health problems,'" "ignores the disputes of fact about how reasonable consumers would interpret the phrase[s] '[] Antioxidant Vit[amin] C' [and Live Probiotics]." Def. Mem. at 1; *Marek*, at 14 (concluding that "[T]his is not

5

one of the rare cases where challenged statements can be determined not to have misled reasonable consumers as a matter of law.")

In the Seventh Circuit, "how a reasonable consumer would interpret this label is a question of fact, not a question of law." *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 495 (7th Cir. 2020). That the Products are alcoholic beverages fails to render the health and nutrient claims of no significance, because it assumes reasonable consumers notice every nuance. These Products are not hard liquor, but kombucha and hard seltzer.

**II.    REGULATIONS SUPPORT PLAINTIFF'S CLAIM OF DECEPTION**

Defendant's argument, that "FDA regulations are not relevant to determining whether a label is deceptive or misleading," is presumptuous and irrelevant, because Plaintiff has not "simply dress[ed] up a generic state law claim of wrongful conduct to prosecute conduct that is 'wrong' only because it happens to violate the federal law requirements of the FDCA." Def. Mem. at 8-9 citing *Pichardo v. Only What You Need, Inc.*, No. 20-cv-493, 2020 WL 6323775, at 3 n.6 (S.D.N.Y. Oct. 27, 2020); *Stemm v. Tootsie Roll Industries, Inc.*, 374 F. Supp. 3d 734, 742 (N.D. Ill. 2019).

Plaintiff's allegations are based on the ICFA, not the FFDCA, because its "concealment [] or omission of [] material facts," "that the Products are [not] a healthful source of nutrients and dietary ingredients," constitutes the type of "deceptive act or practice" the ICFA was designed to redress. *Jamison v. Summer Infant (USA), Inc.*, 778 F. Supp. 2d 900, 911 (N.D. Ill. 2011) citing 815 ILCS 505/2; Compl. ¶ 91.

Although Defendant contends "enforcement of these provisions is reserved to the federal government alone," these representations were made to Plaintiff and consumers, not to the FDA. Def. Mem. at 9 quoting *Zahora v. Orgain, LLC*, No. 21-cv-705, 2021 WL 5140504, at *4 (N.D. Ill. Nov. 4, 2021); *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 344, 349 n.4 (2001)

(upholding principle that private plaintiff cannot assert "fraud-on-the-FDA claim" because there was "clear evidence that Congress intended that the MDA be enforced exclusively by the Federal Government" citing 21 U.S.C. § 337(a)).

Plaintiff's claims are "based on state law tort principles," which is a "field of law that states had traditionally occupied," because she "desired to purchase a product that contained ingredients whose positive effect outweighed the negative effects from consuming alcohol," even though "the deleterious effects of alcohol overtime will not be overcome by the addition of vitamin C and probiotics. *Bausch v. Stryker Corp.*, 630 F.3d 546, 557 (7th Cir. 2010) (distinguishing *Buckman*); Compl. ¶¶ 97, 143.

### III. CONSUMER FRAUD MULTISTATE CLAIMS SHOULD PROCEED

Defendant argues that the Consumer Fraud Multi-State Class claims fail based on technical reasons, because Plaintiff failed to "allege that she ever purchased any of the Products in [North Dakota, Kansas, West Virginia, Wyoming, or Delaware]." Def. Mem. at 4-5 citing *Muir v. Nature's Bounty, Inc.*, No. 15-cv-9835, 2017 WL 4310650, at *9 (N.D. Ill. Sept. 28, 2017) (dismissing multi-state claims, holding that the plaintiff did not have standing "to assert claims he does not have, on behalf of members of a class that has not yet been certified").

However, an equal – and growing – number of courts in this Circuit have "have concluded that [such] concerns are better left for the class-certification stage." *In re Herbal Supplements Mktg. & Sales Pracs. Litig.*, No. 15-cv-5070, 2017 WL 2215025, at *6 (N.D. Ill. May 19, 2017) (denying dismissal of multistate class because it was premature).

Next, Defendant conflates jurisdiction with standing, in asserting these claims fail "for lack of subject-matter jurisdiction," because Plaintiff "resides in Illinois and made her alleged purchases in Illinois." Def. Mem. at 5-6 citing *Harris v. CVS Pharmacy, Inc.*, No. 13-cv-2329, 2015 WL 4694047, at *4 (C.D. Cal. Aug. 6, 2015).

However, because Plaintiff invoked subject matter jurisdiction based on the Class Action Fairness Act ("CAFA"), and established her own standing, "[a]ll class members (no matter where they live) have an Article III controversy with [the defendant]." Compl. ¶ 105; *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011).

Finally, Defendant's attempt to evade jurisdiction with respect to the Multistate Class is unavailing because it has "'continuous and systematic' contacts with [this] [S]tate," and is "subject to general jurisdiction there in any action." Def. Mem. at 5 citing *Bakopoulos v. Mars Petcare US, Inc.*, No. 20-cv-6841, 2021 WL 2915215, at *1 (N.D. Ill. July 12, 2021); *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010).

## IV. PLAINTIFF'S WARRANTY CLAIMS SATISFY THE ELEMENTS

### A. Plaintiff Provided Notice Consistent with the Statute

While Defendant argues "a buyer must provide pre-suit notice of a warranty claim," 810 ILCS 5/2-607(3)(a) makes no reference to filing any legal action. Def. Mem. at 11 citing *De Falco v. Vibrum USA, Inc.*, No. 12-cv-7238, 2013 WL 1122825, at *8 (N.D. Ill. Mar. 18, 2013). Plaintiff purchased the Products "between September and October 2021," and "within a *reasonable time after* [s]he discover[ed]…[the] breach notif[ied] the seller," by filing this action in October 2021. Compl. ¶ 123; 810 ILCS 5/2-607(3)(a) (emphasis added); *In re Bridgestone/Firestone, Inc. Tires Products*, 155 F. Supp. 2d 1069 (S.D. Ind. 2001) (holding that notice can be satisfied by filing of suit).

### B. Plaintiff Satisfied the Direct-Dealing Exception to Privity

Although Defendant argues the absence of privity bars Plaintiff's express and implied warranty claims, the representations, including "Brewed with Benefits," "Live Probiotics" and "Antioxidant Vit[amin] C," satisfy the "direct-dealing" exception, by capitalizing on consumer expectations that these benefits would "overcome the negative effects of one alcoholic beverage."

8

Def. Mem. at 12 citing *Voelker v. Porsche Cars North Amer., Inc.*, 353 F.3d 516, 525 (7th Cir. 2003); *In re Rust-Oleum Restore Mktg., Sales Pracs. & Prod. Liab. Litig.*, 155 F. Supp. 3d 772, 807 (N.D. Ill. 2016); *see also Rhodes Pharmacal Co. v. Continental Can Co.*, 72 Ill. App. 2d 362, 219 N.E.2d 726 (1st Dist. 1966); Compl. ¶¶ 12-14, 55.

The extent to which Defendant was aware of these consumer beliefs is a "fact-intensive" question, which is why consideration of privity "is often 'not appropriate at the motion-to-dismiss stage.'" *Elward v. Electrolux Home Prod., Inc.*, 214 F. Supp. 3d 701, 705 (N.D. Ill. 2016).

C. <u>Misrepresentations Support Warranty Claims</u>

Through its statements touting nutrients, vitamins, and probiotics, Defendant "made [] affirmation[s] of fact or promise" that these attributes would outweigh the otherwise unsalutary effects of alcohol, which satisfies the express and implied warranty claims and the Magnuson Moss Warranty Act ("MMWA"). Compl. ¶ 154; *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705 (N.D. Ill. 2020) quoting 810 ILCS 5/2-313(1)(a); 810 ILCS 5/2-314(2)(f)(requiring that goods "conform to the[ir] promises or affirmations of fact" to be merchantable); 15 U.S.C. § 2301(6)(a) (defining "written warranty" as "any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer").

D. <u>MMWA Claim is Based on the Plausible Express and Implied Warranty Claims</u>

Defendant's focus on certain narrow requirements of the MMWA is misplaced because these criteria are only relevant where this statute is the basis for subject matter jurisdiction. Def. Mem. at 13-14 (highlighting absence of "pre-suit notice" and the "only one named plaintiff, not 100 or more" citing 15 U.S.C. § 2310(d)(3)(C)).

The "specific limitations on the exercise of jurisdiction" under the MMWA are not applicable, because Plaintiff brought her claims "pursuant to [the] Class Action Fairness Act of 2005 ('CAFA')." Def. Mem. at 14 quoting *Floyd v. Am. Honda Motor Co., Inc.*, 966 F.3d 1027,

9

1032 (9th Cir. 2020); Compl. ¶ 105 citing 28 U.S.C. § 1332(d)(2); *Wolph v. Acer America Corp.*, No. 09-cv-01314, 2009 WL 2969467, *2 (N.D. Cal. Sept. 14, 2009) (finding that because plaintiff alleged "an alternative basis for jurisdiction under CAFA, the Court has jurisdiction to adjudicate [the] Magnuson-Moss Act claim").

Lastly, Defendant's attempt at creating a distinction between the "reasonable notice" contemplated by 810 ILCS 5/2-607(3)(a), and "MMWA notice," is lacking. Def. Mem. at 13 (citing 15 U.S.C. § 2310(e) and alleging Plaintiff failed to comply). First, courts have consistently held "warranty notice" equivalent to "MMWA notice." Second, while 15 U.S.C. § 2310(e) requires notice, it must be provided "at that time [] they are acting on behalf of the class," which means when certification is sought, but not before.

## V.   COMMON LAW CLAIMS ARE ADEQUATELY PLED

### A.   Special Relationship Supports Negligent Misrepresentation Claim

Defendant's reliance on the economic loss rule, that Plaintiff did not allege personal or property injury, is insufficient to overcome her negligent misrepresentation claim. Def. Mem. at 14 citing *Moorman Mfg. Co. v. National Tank Co.*, 435 N.E.2d 443, 450 (Ill. 1982).

As custodian of "Flying Embers," a "trusted brand" with "special knowledge and experience," Defendant "had a [non-delegable] duty," "outside of the contract" to provide non-deceptive information, which it breached. *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill.2d 137 (1994) citing *Moorman*, 435 N.E.2d at 450; Compl. ¶¶ 1, 163-64.

### B.   The Complaint Exceeds Particularity Requirements for Fraud

Contrary to Defendant's contention, Plaintiff "adequately allege[d] the 'who, what, where, when, and how' of the alleged fraud, sufficient to satisfy Rule 9(b)." Def. Mem. at 14-15 citing *Quitno v. General Motors, LLC*, No. 1:18-cv-07598, 2020 WL 777273, at *5 (N.D. Ill. Feb. 18,

10

2020); *Ferris Mfg. Corp. v. Carr*, No. 14-cv-04663, 2015 WL 279355, at *6 (N.D. Ill. Jan. 21, 2015). The "who" is "Fermented Sciences, Inc." Compl. ¶ 117. The "what" is its "Hard Seltzer" and "Hard Kombucha" beverages, promoted as containing "Antioxidant Vit[amin] C," "Antioxidants," "Real Botanicals," and "Crafted With Live Probiotics." Compl. ¶ 1. The "where" and "when" was at "Whole Foods, 215 IL-83 Elmhurst, IL 60126, between September and October 2021." Compl. ¶ 123. The "how" is promoting health benefits with "the addition of antioxidants" to "misconstrue the negative effects of even moderate amounts of alcohol consumption." Compl. ¶ 54. These facts satisfy Fed. R. Civ. P. 9(b), "although the exact level of particularity that is required will necessarily differ based on the facts of the case." *Anchor Bank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

    C.    <u>Unjust Enrichment is Viable</u>

Recognizing that it could not credibly oppose Plaintiff's unjust enrichment claim, Defendant chose not to address it, which "results in waiver." *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010). Though it may belatedly allege that the unjust enrichment claim rests on the same allegations as the other claims, "fundamental principles of justice, equity and good conscience" require all causes of action to proceed. *Ass'n Benefit Servs. v. Caremark Rx, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007).

**VI.    PLAINTIFF HAS STANDING TO SEEK INJUNCTIVE RELIEF**

Defendant argues that Plaintiff lacks standing to seek injunctive relief because she "'is now aware of' Defendant's sales practices and is "'not likely to be harmed by the practices in the future.'" Def. Mem. at 7 quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 741 (7th Cir. 2014).

However, unlike the plaintiff in *Camasta*, who "had merely put forth the bare assertion that 'there [wa]s a substantial danger that these wrongful retail practices w[ould] continue,'" Plaintiff

11

alleged "the practices continue." *Le v. Kohls Dep't Stores, Inc.*, 160 F. Supp. 3d 1096, 1111 (E.D. Wis. 2016) citing *Camasta v. Jos. A Bank Clothiers, Inc.*, No. 12-cv-7782, 2013 WL 474509, at *11 (N.D. Ill. Feb. 7, 2013); Compl. ¶ 141.

Further, Plaintiff's injury is that even though she "intends to, seeks to, and will purchase the Product," she is unable to do so "with the assurance that Product's representations are consistent with their composition," which causes her to avoid purchasing the Product, and other similarly represented products, even though she would like to. Compl. ¶¶ 131-32. This "is enough to establish, at this stage in the proceedings, that Plaintiff has standing to seek injunctive relief." *Muir v. Nature's Bounty, Inc.*, No. 15-cv-9835, 2016 WL 5234596, at *10 (N.D. Ill. Sept. 22, 2016) (holding that a plaintiff in a consumer products class action could seek injunctive relief where the plaintiff was able to show that the defendant's fraudulent conduct was ongoing).

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion or in the alternative grant leave to file an Amended Complaint.

Dated: April 12, 2022

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
spencer@spencersheehan.com
60 Cuttermill Rd Ste 409
Great Neck NY 11021
Tel: (516) 268-7080

**Certificate of Service**

I certify that on April 12, 2022, I served and/or transmitted the foregoing by the method below to the persons or entities indicated, at their last known address of record (blank where not applicable).

|  | CM/ECF | First-Class Mail | Email | Fax |
|---|---|---|---|---|
| Defendant's Counsel | ☐ | ☐ | ☐ | ☐ |
| Plaintiff's Counsel | ☐ | ☐ | ☐ | ☐ |
| Courtesy Copy to Court | ☐ | ☐ | ☐ | ☐ |

/s/ Spencer Sheehan